UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JUAN GARCIA,

                Plaintiff,

   - against -                             **MEMORANDUM AND ORDER**
                                                   16-CV-6180 (RRM) (VMS)

DETECTIVE JOHN GRIDLEY, Shield No. 4665; and
THE CITY OF NEW YORK,

                Defendants.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

Plaintiff Juan Garcia brings this action alleging malicious prosecution claims under state law and § 1983 against New York City Police Department Detective John Gridley and under state law based on respondeat superior against the City of New York ("the City"). Gridley and the City have moved for summary judgment on Garcia's claims. For the reasons below, the motion for summary judgment is granted.

## BACKGROUND

**I.    Factual Background**

The relevant facts outlined below are drawn from the parties' Local Rule 56.1 Statements of Material Facts, as well as evidence submitted by the parties in connection with the motion for summary judgment. Unless otherwise noted, the facts are undisputed.

On August 22, 2015, Karamchand Bharrat and Elizabeth Boccola were robbed at gunpoint in the South Ozone Park neighborhood of Queens. (Plaintiff's Rule 56.1 Statement ("Pl.'s SOF") (Doc. No. 33-18) ¶ 51; Defendant's Response to Plaintiff's Rule 56.1 Statement ("Def.'s Resp. Pl.'s SOF") (Doc. No. 33-31) ¶ 51.) Defendants maintain that the perpetrator of that robbery was plaintiff, Juan Garcia. (Defendant's Rule 56.1 Statement ("Def.'s SOF") (Doc.

No. 33-3) ¶ 1.) Garcia does not deny that the robbery occurred, but denies that he was the perpetrator. (Pl.'s SOF ¶¶ 1–3.)

The parties agree on what occurred following the two robberies. First, Bharrat began to chase the person who had robbed him. (Pl.'s SOF ¶¶ 52–53; Def.'s Resp. Pl.'s SOF ¶¶ 52–53.) Kawall Shivbasant observed Bharrat chasing the perpetrator. (Pl.'s SOF ¶ 52; Def.'s Resp. Pl.'s SOF ¶ 52.) When the perpetrator ran in Shivbasant's direction, Shivbasant attempted to trip him, but the perpetrator responded by pointing a gun at Shivbasant and pulling the trigger – all while continuing to run away from Bharrat. (Pl.'s SOF ¶¶ 53–55; Def.'s Resp. Pl.'s SOF ¶¶ 53–55.) The weapon did not fire. (Pl.'s SOF ¶ 55; Def.'s Resp. Pl.'s SOF ¶ 55.) The gun was approximately two feet from Shivbasant's face for approximately one second. (Pl.'s SOF ¶ 56; Def.'s Resp. Pl.'s SOF ¶ 56.) Afterward, either Shivbasant or his wife called the police to report the incident.[1] (Def.'s SOF ¶ 6; Pl.'s SOF ¶¶ 6, 57; Def.'s Resp. Pl.'s SOF ¶ 57; Zangrilli Decl., Ex. E (Doc. No. 33-9).)

Shivbasant and the two robbery victims, Bharrat and Boccola, were taken to the New York City Police Department ("NYPD") 106th Precinct stationhouse, where they viewed photo arrays under the direction of Detective John Gridley. (Pl.'s SOF ¶ 58; Def.'s Resp. Pl.'s SOF ¶ 58.) Shivbasant, Bharrat, and Boccola did not identify the perpetrator in the photos. (*Id.*)

The next day, August 23, 2015, Shivbasant was driving on Liberty Avenue with his family when he saw Juan Garcia walking with a friend. (Pl.'s SOF ¶ 59; Def.'s Resp. Pl.'s SOF

---

[1] The parties seem to present contradictory facts regarding this phone call. Defendants provide a recording of a 911 call in which a man they state is Shivbasant reports the August 22 incident to police. (Zangrilli Decl., Ex. E.) Yet defendants elsewhere appear to agree that Shivbasant was crying and unable to speak following the robbery, so his wife called the police to report the incident. (Pl.'s SOF ¶ 57; Def.'s Resp. Pl.'s SOF ¶ 57.) This is consistent with Shivbasant's testimony at his deposition: "[M]y wife . . . called the cops, because I couldn't make no phone call. I couldn't speak for like a good couple of minutes. I just left tears was running down my eyes." (Levine Decl., Ex. D ("Shivbasant Dep.") at 33–34; *see also* Shivbasant Dep. at 59.) Whether it was Shivbasant or his wife who called the police is not material to this summary judgment motion.

¶ 59.)  Believing that Garcia was the person who had committed the robberies the day before, Shivbasant called the police.  (Pl.'s SOF ¶¶ 10, 59; Def.'s Resp. Pl.'s SOF ¶¶ 10, 59; Def.'s SOF ¶ 10; Zangrilli Decl., Ex. F (Doc. No. 33-10).)  Shivbasant subsequently got into the back seat of a police car and canvassed the neighborhood until he spotted Garcia.  (Pl.'s SOF ¶ 60; Def.'s Resp. Pl.'s SOF ¶ 60.)  Garcia was placed under arrest by NYPD officers at or near the intersection of 122nd Street and Liberty Avenue in Queens, New York.  (Pl.'s SOF ¶¶ 17, 60; Def.'s Resp. Pl.'s SOF ¶ 60; Def.'s SOF ¶ 17.)  According to defendants, Garcia was arrested by Officer Stewart Wallace for menacing in the second degree at or about 4:11 p.m.  (Def.'s SOF ¶ 26.)  Garcia and defendants agree that Garcia was placed under arrest based on Shivbasant's identification of him.  (Pl.'s SOF ¶ 42; Def.'s SOF ¶ 42.)

Garcia was transported to the NYPD 106th Precinct.  (Pl.'s SOF ¶ 27; Def.'s SOF ¶ 27.)  Detective John Gridley spoke with Garcia when he arrived at the precinct, and Gridley conducted a lineup in which Garcia was seated among five other individuals.  (Pl.'s SOF ¶¶ 28, 62; Def.'s Resp. Pl.'s SOF ¶¶ 28, 62.)  All six people in the lineup covered their clothing with blankets.  (Pl.'s SOF ¶ 62; Def.'s Resp. Pl.'s SOF ¶ 62.)  Bharrat and Boccola viewed the lineup.  (Pl.'s SOF ¶¶ 62–63; Def.'s Resp. Pl.'s SOF ¶¶ 62–63.)  Bharrat did not identify anyone in the lineup as the perpetrator, while Boccola identified a person other than Garcia.  (Pl.'s SOF ¶¶ 44, 62–63; Def.'s Resp. Pl.'s SOF ¶¶ 62–63; Def.'s SOF ¶ 44.)  Shivbasant did not view the lineup.  (Pl.'s SOF ¶ 43; Def.'s SOF ¶ 43.)

An Assistant District Attorney ("ADA") was at the precinct while the lineup was conducted.  (Pl.'s SOF ¶ 67; Def.'s Resp. Pl.'s SOF ¶ 67.)  In an interview with employees of the District Attorney's Office, Garcia stated that he had been at home on the day of the robberies, only leaving once briefly to purchase a cheeseburger.  (Pl.'s SOF ¶ 68; Def.'s Resp. Pl.'s SOF ¶

68.)  After Bharrat and Boccola failed to identify Garcia, Gridley spoke with the ADA.  (Pl.'s SOF ¶ 65; Def.'s Resp. Pl.'s SOF ¶ 65.)  Gridley testified that he did not remember what he said or what was discussed, but remembered the ADA saying "that they will prosecute based on [Shivbasant's] account of the incident."  (*Id.*; Levine Decl., Ex. E ("Gridley Dep.") (Doc. No. 33-24) at 37.)  Garcia "avers that defendant Gridley and representatives from the District Attorney's office determined to prosecute plaintiff despite the two robbery victims' failure to identify him, instead relying on the result of the show up."  (Pl.'s SOF ¶ 45.)

The ADA prepared a criminal complaint, which Gridley signed on August 24, 2015.  (Pl.'s SOF ¶ 67; Def.'s Resp. Pl.'s SOF ¶ 67.)  The criminal complaint charged Garcia with robbery in the first degree and menacing in the second degree.  (Pl.'s SOF ¶ 49; Def.'s SOF ¶ 49.)  Garcia was not charged with the robbery of the Boccola, who had identified another person in the lineup as the perpetrator.  (Pl.'s SOF ¶ 46; Def.'s SOF ¶ 46.)  Garcia was arraigned the same day, and held in the custody of the New York City Department of Correction through his appearance before a Queens County grand jury on or about September 21, 2015.  (Pl.'s SOF ¶¶ 69–70; Def.'s Resp. Pl.'s SOF ¶¶ 69–70.)  Shivbasant testified before the grand jury as a witness.  (Pl.'s SOF ¶ 47; Def.'s SOF ¶ 47.)  The grand jury voted not to indict Garcia on September 21, 2015, and Garcia was released from custody the same day.  (Pl.'s SOF ¶¶ 69–70; Def.'s Resp. Pl.'s SOF ¶¶ 69–70.)  The charges against Garcia were dismissed and sealed on September 23, 2015.  (Pl.'s SOF ¶ 69; Def.'s Resp. Pl.'s SOF ¶ 69.)

## II. Garcia's Claims

Garcia filed the instant action on November 7, 2016.  (Compl. (Doc. No. 1).)  Garcia brings two separate malicious prosecution claims against Gridley, under 42 U.S.C. § 1983 and state law, based on Gridley's role in bringing robbery and menacing charges against Garcia.

(Compl. ¶¶ 14–43.) Garcia also brings his state law malicious prosecution claim against the City based on principles of respondeat superior, alleging that Gridley maliciously prosecuted him while acting within the scope of his employment with the City. (*Id.* ¶¶ 37–43; Memorandum of Law in Opposition ("Opp. Mot.") (Doc. No. 33-17) at 13 n.1.)

### III. Motion for Summary Judgment

Gridley and the City collectively move for summary judgment on Garcia's malicious prosecution claims, arguing that Gridley did not "initiate" Garcia's prosecution. (Defendants' Memorandum of Law in Support of Summary Judgment ("Mot.") (Doc. No. 33-2) at 17–19.) Defendants further argue that even if Gridley did initiate Garcia's prosecution, he had probable cause to do so, and furthermore, did not act with actual malice. (*Id.* 19–22.) Finally, Gridley and the City argue that Gidley is entitled to qualified immunity because he had arguable probable cause to arrest, and subsequently prosecute, Garcia. (*Id.* at 22–25.)

In response, Garcia argues that Gridley initiated the prosecution when he signed the criminal complaint against Garcia. (Opp. Mot. at 4–5.) Garcia further maintains that the prosecution was initiated without probable cause. While he does not dispute that there was probable cause for his arrest, Garcia contends that probable cause to subsequently prosecute him was vitiated after the robbery victims failed to identify him in a lineup. (Opp. Mot. at 5.) In making this argument, Garcia relies in large part on arguments about the unreliability of eyewitness testimony, alleging that problems of weapons-focus and cross-racial identification cast doubt on Shivbasant's identification of Garcia. (*Id.* at 5–11.) Based on these general problems with eyewitness testimony, Garcia argues, Gridley "should have realized that Mr. Shivbasant's identification of plaintiff as his assailant was not sufficient to justify prosecuting him." (*Id.* at 11.) Garcia further argues that Gridley's actual malice can be inferred from the

5

lack of probable cause supporting the prosecution. (*Id.* at 12–13.) Finally, Garcia maintains that Gridley is not entitled to qualified immunity because "any arguable probable cause . . . dissipated . . . before he initiated the prosecution." (*Id.* at 14–15.)

### STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004).

Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine

factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

### I. Malicious Prosecution Claims Against Gridley

#### A. Applicable Law

To prevail on a malicious prosecution claim under New York law, a plaintiff must establish that defendant (1) initiated a prosecution against plaintiff, (2) absent probable cause to believe the proceeding could succeed, (3) with malice, and that (4) the prosecution terminated in plaintiff's favor. *See Duncan v. City of New York*, No. 11-CV-3901 (ENV) (JO), 2017 WL 3105856, at *3 (E.D.N.Y. July 21, 2017) (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)), *adhered to on denial of reconsideration*, No. 11-CV-3901 (ENV) (JO), 2018 WL 3421312 (E.D.N.Y. July 13, 2018). When a malicious prosecution claim is brought under § 1983, the plaintiff must also establish that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000) (citing *Murphy v. Lynn*, 118 F.3d 938, 944–46 (2d Cir. 1997)).

#### B. Initiation

The initiation element is satisfied when a defendant police officer signs a sworn criminal complaint against the plaintiff. *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."); *Sankar v. City of New York*, 867 F. Supp. 2d 297, 311 (E.D.N.Y. 2012) ("Under New York law, an officer signing a sworn criminal complaint is sufficient to satisfy this [initiation] element.").

7

It is undisputed that Gridley signed a sworn criminal complaint against Garcia bringing charges of first-degree robbery and second-degree menacing. (Pl.'s SOF ¶¶ 49, 67; Def.'s Resp. Pl.'s SOF ¶¶ 49, 67.) Because an officer's act of signing a sworn criminal complaint satisfies the initiation element of a malicious prosecution claim, the Court finds as a matter of law that Gridley initiated Garcia's prosecution. *See Cameron*, 598 F.3d at 63.

### C. Probable Cause

With respect to the second element, "[u]nder New York law, 'even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996) (quoting *Cox v. County of Suffolk*, 780 F. Supp. 103, 108 (E.D.N.Y. 1991)). Probable cause is only eliminated, however, where "the groundless nature of the charges [is] made apparent by the discovery of some intervening fact." *Id.*; *see also Radin v. City of New York*, No. 14-CV-7347 (NG) (RLM), 2016 WL 3982463, at *3 (E.D.N.Y. July 22, 2016) (noting the general principle that "conflicting evidence does not negate probable cause," and further explaining that "[t]his principle applies equally to conflicting identification evidence"). "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). The Second Circuit has advised that courts "should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)).

As Garcia himself acknowledges, there was probable cause supporting Garcia's initial arrest based on Shivbasant's identification of him as the perpetrator of the robberies and the menacing incident the day before. (Opp. Mot. at 5 ("[Garcia] is fully cognizant of the fact that Mr. Shivbasant's identification of him to the police officers on the street was sufficient to constitute probable cause for his arrest.").) However, Garcia maintains that this probable cause was vitiated by the robbery victims' subsequent failure to identify him in a lineup prior to Gridley's signing of the criminal complaint. (*Id.*)

An eyewitness account identifying the suspect as the perpetrator is generally sufficient to establish probable cause. *See Radin*, 2016 WL 3982463, at *3 ("Incriminating information from a victim or eyewitness is generally sufficient to establish probable cause, especially when there are no facts that call the information's veracity into doubt."). However, in certain cases, probable cause based on an eyewitness identification may be vitiated by facts discovered after the identification. In arguing that this is such a case, Garcia notes similarities between this case and the facts of *DaCosta v. Tranchina*, 281 F. Supp. 3d 291 (E.D.N.Y. Dec. 12, 2017), *rev'd and remanded*, 783 F. App'x 54 (2d Cir. 2019) (summary order). (Opp. Mot. at 9–11.) In that case, a plaintiff was charged with robbery after three robbery victims viewed a lineup, and after viewing, one identified the plaintiff as the perpetrator, one identified another person in the lineup, and a third made no identification. *Id.* at 296. The eyewitness who identified the plaintiff as the perpetrator, however, did so on the basis of a wanted poster shown on television in relation to another crime that occurred approximately one month after the robbery. *Id.* Moreover, that eyewitness subsequently identified the plaintiff at the police precinct in a photo array using the same wanted poster image. *Id.* In light of these facts, as well as other irregularities with the identification and investigation, the district court concluded that a jury

9

could find that probable cause had been vitiated, precluding summary judgment on the plaintiff's malicious prosecution claim against the detective. *Id.* at 310.

The facts of *DaCosta* involve serious identification issues not present here. In fact, the district court in *DaCosta* acknowledged that "a simple conflict between eyewitness identifications," as described in this case, "may not negate probable cause." *DaCosta*, 281 F. Supp. 3d at 310. While it is true that the failed identifications provided Gridley with some basis to doubt Shivbasant's identification of Garcia, those failed identifications must be viewed in the "particular factual context[]" of this case. *Panetta*, 460 F.3d at 395. Shivbasant observed the perpetrator run in his direction, point a gun in his face, and run past him. (Pl.'s SOF ¶¶ 52–53; Def.'s Resp. Pl.'s SOF ¶¶ 52–53.) In addition to this unique vantage point with respect to the perpetrator, Shivbasant identified the perpetrator on his own accord the very next day. (Pl.'s SOF ¶¶ 10, 59; Def.'s Resp. Pl.'s SOF ¶¶ 10, 59; Def.'s SOF ¶ 10.) Under these circumstances, Bharrat and Boccola's failures to identify Garcia in the lineup did not "ma[k]e apparent" the alleged "groundless nature" of the charges against Garcia.[2] *Lowth*, 82 F.3d at 571. The Court therefore finds that the failed identifications by Bharrat and Boccola did not vitiate probable cause for Garcia's prosecution based on Shivbasant's identification. Gridley is entitled to summary judgment on Garcia's malicious prosecution claim.

### D. Qualified Immunity

Even where probable cause is lacking, an officer is entitled to qualified immunity on malicious prosecution claims where the "probable cause determination was objectively

---

[2] As the New York Court of Appeals has observed, "In any investigation the police are likely to encounter discrepancies, particularly in cases involving eyewitness identification. These matters may impair their ability to prove guilt beyond a reasonable doubt at trial, but they generally have little bearing at preliminary stages where the only relevant concern is whether there is sufficient evidence to show probable cause to believe the defendant committed the crime." *Gisondi v. Town of Harrison*, 72 N.Y.2d 280, 285 (1988).

reasonable—that is, whe[re] there was 'arguable' probable cause . . . ." *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) (citation omitted). In other words, an officer is entitled to qualified immunity "if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Rios v. City of New York*, 687 F. App'x 88, 90 (2d Cir. 2017) (summary order) (internal quotation marks and citations omitted).

In discussing *DaCosta v. Tranchina* in his opposition brief, plaintiff fails to note that the Second Circuit reversed the portion of the district court's ruling in *DaCosta* that held that the defendant officer was not entitled to qualified immunity. 281 F. Supp. 3d 291 (E.D.N.Y. Dec. 12, 2017), *rev'd and remanded*, 783 F. App'x 54 (2d Cir. 2019) (summary order). (Opp. Mot. at 9–11.) Addressing the conflicting identifications, the Second Circuit explained that "officers of reasonable competence could disagree" as to whether the "misidentification and nonidentification by . . . two victims of the robbery" dissipated probable cause based on identification by a third, and held that the officer was entitled to qualified immunity. *DaCosta*, 783 F. App'x at 55.

Here, given Shivbasant's credible identification of Garcia as the perpetrator, Gridley had at least "arguable probable cause" supporting Garcia's prosecution, even after Bharrat and Boccola's failed identifications. *See Betts*, 751 F.3d at 83. Therefore, even if probable cause was vitiated by the failed identifications, the Court finds that "officers of reasonable competence" could conclude that there was probable cause supporting charging Garcia, and Gridley is entitled to summary judgment on the basis of qualified immunity. *Rios*, 687 F. App'x at 90.

## II.     Malicious Prosecution Claim Against the City

Because the underlying malicious prosecution claims against Gridley fail, the City is entitled to summary judgment on Garcia's malicious prosecution claim based on respondeat

11

superior. *See Hargroves v. City of New York*, No. 03-CV-1668 (RRM) (VMS), 2014 WL 1271024, at *4 (E.D.N.Y. Mar. 26, 2014) ("Given that the state false arrest and malicious prosecution claims are dismissed as against the individual officers [on the basis of qualified immunity], plaintiffs' same claims against the City [based on respondeat superior] must also be dismissed."); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996).

## CONCLUSION

For the above reasons, Gridley and the City's motion for summary judgment is granted. This action is dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment for defendants and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      May 18, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge